UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| SPRING GLEN APARTMENTS LLP, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ARCH SPECIALTY INSURANCE COMPANY, ) <br> ) <br> Defendant. ) <br> ) | CIVIL ACTION <br> No. 3:17-00028-WGY-ARS |

YOUNG, D.J.[1]　　　　　　　　　　　　　　　　　　April 2, 2018

**MEMORANDUM AND ORDER**

## I.　INTRODUCTION

Spring Glen Apartments LLP ("Spring Glen") brought this action against Arch Specialty Insurance Company ("Arch") alleging breach of contract and bad faith in connection with Arch's denial of Spring Glen's claim under an insurance policy issued by Arch.  The parties now cross-move for summary judgment.

### A.　Procedural History

On February 7, 2017, Spring Glen filed a complaint in this Court under its diversity jurisdiction alleging breach of insurance contract and seeking insurance coverage for property

---

[1] Of the District of Massachusetts, sitting by designation. See ECF No. 19.

damage and loss of business income. Compl. ("Compl."), ECF No. 1, ¶ 1. Spring Glen also seeks consequential damages, attorneys' fees, and other damages caused by Arch's alleged bad-faith denial of coverage. Id. On April 28, 2017, Spring Glen moved for partial summary judgment on its breach of contract claim. See Pl.'s Mot. Partial Summ. J. ("Pl.'s Mot."), ECF No. 9; Pl.'s Mem. Supp. Pl.'s Mot. Partial Summ. J. ("Pl.'s Mem."), ECF No. 10. Arch cross-moved for summary judgment on both counts. See Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 12; Def.'s Mem. Opp'n. Pl.'s Mot. Partial Summ. J. & Mem. Supp. Def.'s Mot. Summ. J. ("Def.'s Mem."), ECF No. 13. The parties jointly filed a stipulation of facts. Stip. Facts ("Stip. Facts"), ECF No. 8. This Court heard oral argument on the motions on February 20, 2018, and it took the matter under advisement. Min. Entry, ECF No. 23.

**B.   Undisputed Facts**

Spring Glen is a North Dakota limited liability partnership that owns an apartment building (the "Building") in North Dakota. Stip. Facts 1. The Building was covered under a policy (the "Policy") issued by Arch, an insurance company incorporated in Missouri with a principal place of business in New Jersey. Id. at 1-3.

1. **Spring Glen's Claim**

On March 14, 2016, while the Policy was in effect, seven to ten inches of water flooded the "lower floor of the Building." Stip. Facts 1-2. The flooding occurred when an underground water main (the "Pipe") cracked. Id. The Pipe, which serviced the Building, was located roughly seven feet below the Building and was over forty years old. Id. at 1. The crack in the Pipe was caused entirely by wear and tear. Id. at 2. The water not only caused damage to the "lower floor" but also caused cracking in the walls and ceilings of upper floors that housed apartments (together, the "Property Damage"). Id. The Property Damage rendered the Building untenantable until repaired, causing Spring Glen to sustain a loss of business income (the "Business Losses"). Id.

Spring Glen filed an insurance claim with Arch for the Property Damage and Business Losses. Id. at 4. Arch denied Spring Glen's claim in letters dated May 17, 2016, June 3, 2016, and June 8, 2016. Id.

2. **The Policy**

The Policy contains three forms relevant to this action: Policy Declarations (the "Declarations"), a Building and Personal Property Coverage Form (the "Property Coverage Form"), and a Causes of Loss -- Special Form (the "Causes of Loss Form"). Ins. Policy ("Ins. Policy") 16, 18, 34, 43, ECF No. 8-

1. The Declarations indicate that the Policy covers both the Building itself and business income from the Building. Id. at 16-17. In the "Covered Causes of Loss" section of the Declarations, the Policy states "Special." Id.

The Property Coverage Form states that the Policy covers "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Id. at 18. The Policy defines "Covered Property" as including "the building or structure described in the Declarations," which, as described above, is the Building. Id. The Policy defines "Covered Cause of Loss" as "direct physical loss unless the loss is excluded or limited in [the] policy." Id. at 43.

The Causes of Loss Form, which pertains to "Special" causes of loss, contains various lists of causes that are excluded from coverage. Id. Section B(1) of the Causes of Loss Form sets forth one such list, stating: "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is <u>excluded regardless of any other cause</u> or event that contributes concurrently or in any sequence to the loss." Id. (emphasis added). One of the excluded causes listed is water (the "Water Exclusion"). Id. at 44. The Water Exclusion excludes coverage, in pertinent part, for:

4

> (3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment; (4) Water under the ground surface pressing on, or flowing or seeping through: (a) Foundations, walls, floors or paved surfaces; (b) Basements, whether paved or not; or (c) Doors, windows or other openings.

Id.

The Water Exclusion "applies regardless of whether any" of the listed causes "is caused by an act of nature or otherwise caused." Id. The Water Exclusion also includes an "ensuing loss provision," which states that "if any of the above [causes] results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage." Id.

Section B(2) of the Causes of Loss Form lists additional exclusions, including "loss or damage caused by or resulting from. . . [w]ear and tear" (the "Wear and Tear Exclusion"). Id. at 45. Later, it states, "[b]ut if an excluded cause of loss [listed in this subsection] results in a '<u>specified cause of loss</u>' . . . we will pay for the loss or damage caused by that 'specified cause of loss.'" Id. (emphasis added).

In the Definitions section of the Causes of Loss Form, "specified causes of loss" is defined, in part, as "water damage." Id. at 52. "Water damage" is defined as:

> (1) Accidental discharge or leakage of water . . . as the direct result of the breaking apart or <u>cracking</u> of a plumbing, heating, air conditioning or other system

5

or appliance (other than a sump system including its related equipment and parts), that is located on the described premises . . . and (2) Accidental discharge or leakage of water . . . as the direct result of the breaking apart or <u>cracking of a water or sewer pipe</u> that is located <u>off the described premises</u> and is part of a municipal potable water supply system . . . <u>if the breakage or cracking is caused by wear and tear.</u>

<u>Id.</u> (emphasis added). The Definitions section then explains:

> But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. . . . To the extent that accidental discharge or leakage of water falls within the criteria set forth [above]. . such water is <u>not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.</u>

<u>Id.</u> (emphasis added).

## II. ANALYSIS

The parties ask this Court to decide whether the damages were caused by or resulted from a Covered Cause of Loss. Pl.'s Mem. 1; Def.'s Mem. 2. The parties disagree as to: (1) whether the cracked Pipe, which caused water to enter the Building, is a Covered Cause of Loss under the Policy, and (2) whether the question of Arch's acting in bad faith is proper for summary judgment. Pl.'s Mem. 1; Def.'s Mem. 2, 18. The Court concludes that the cracked Pipe is a Covered Cause of Loss under the Policy and that whether Arch acted in bad faith is a question of fact. Therefore, the Court denies Arch's motion for summary judgment on Counts One and Two, and grants Spring Glen's motion for summary judgment on Count One.

6

A.  Standard of Review

A party is entitled to summary judgment when there exists "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). The moving party must demonstrate to the court that due to the lack of disputed facts, the court ought enter "judgment as a matter of law" in the moving party's favor. Fed. R. Civ. P. 56(a); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51 (2000); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995).

B.  Breach of Contract

Insurance policy interpretation is matter of law. Fisher v. American Family Mut. Ins. Co., 579 N.W.2d 599, 602 (N.D. 1998). Since insurance policies are contracts, substantive law applies. Centre Ins. Co. v. Blake, 370 F. Supp. 2d 951, 954 (D.N.D. 2005). Therefore, North Dakota law applies in this case. National Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003) ("State law governs the interpretation of insurance policies.").

In North Dakota, courts "construe insurance contracts as a whole to give meaning and effect to each clause, if possible." Ziegelmann v. TMG Life Ins. Co., 607 N.W.2d 898, 900 (N.D. 2000). Though courts "regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, [courts] will not rewrite a contract . . . if the policy unambiguously precludes coverage." Id. at 900. Therefore, courts "look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction." Id. (citing Martin v. Allianz Life Ins. Co. of North America, 573 N.W.2d 823 (N.D. 1998)).

A plaintiff bears the initial burden of proving that the damages it sustained are covered by the insurance policy. Kasper v. Provident Life Ins. Co., 285 N.W.2d 548, 554 (N.D. 1979). The burden then shifts to the defendant to prove that those damages fall within an exclusion to the policy. Id. Should a court uncover any ambiguous terms within the policy, the meaning of those terms ought be interpreted in favor of the insured. Dundee Mut. Ins. Co. v. Marifjeren, 587 N.W.2d 191, 194 (N.D. 1998)(citing Fisher v. American Family Mut. Ins., 579 N.W.2d 599, 602 (N.D. 1998)). An ambiguous policy term is interpreted "to mean what a reasonable person in the position of the insured would think it meant." Id. (quoting Sellie v. North Dakota Ins. Guar. Ass'n, 494 N.W.2d 151, 157 (N.D. 1992)).

Therefore, if an ambiguous "term supports an interpretation imposing liability on the insurer and one that does not, [courts] will adopt the interpretation imposing liability." Dundee, 587 N.W.2d at 194.

Here, in order for the Policy to provide coverage, there must be damage to Covered Property and that damage must have been caused by a Covered Cause of Loss. Ins. Policy 18. The first point--damage to Covered Property (the Building and the Business Losses)--is stipulated. Stip. Facts 2-3. The parties dispute whether the Property Damage and Business Losses were due to a Covered Cause of Loss. Pl.'s Mem. 1; Def.'s Mem. 2. Arch argues the Water Exclusion applies, thus negating coverage for any of the damages sustained from water leaking out of the cracked Pipe. Def.'s Mem. 6. Spring Glen argues the Water Exclusion does not apply in this case and, in any event, is immaterial because the Wear and Tear Exclusion's specified causes of loss exception for water damage applies to impose liability on Arch. Pl.'s Mem. 8; Pl.'s Reply Mem. Supp. Pl.'s Mot. Partial Summ. J. and Mem. Opp'n. Def.'s Mot. Summ. J. ("Pl.'s Reply"), ECF No. 15 at 3.

### 1. Water Exclusion

Arch argues that the Water Exclusion applies to Spring Glen's claim and thus the damages in this case are not covered by the Policy. Def.'s Mem. 6. Arch reasons that the Water

Exclusion applies here because the Policy states that it "applies regardless of whether any of the above. . . is caused by an act of nature or is otherwise caused," and that "loss or damage is excluded regardless of any other cause."[2]  Ins. Policy 43, 44; Def.'s Reply Mem. Supp. Def.'s Mot. Summ. J. ("Def.'s Reply"), ECF 17 at 2.  According to Arch, the "otherwise caused" language ought be interpreted to mean that any other cause is immaterial.  Def.'s Mem. 8, 10; Def.'s Reply 2.  Since this exclusion applies, Arch argues, the inquiry ends.  Id.

Arch relies on four out-of-circuit cases to demonstrate that if a policy excludes a cause of loss, coverage is precluded even if another cause of loss is covered.  See Texas Renegade Const. Co. v. Hartford Lloyd's Ins. Co., 546 F. App'x 400 (5th Cir. 2013); Bilotto v. Allied Prop. & Cas. Ins. Co., 79 F.Supp.3d 660, 673-74 (W.D. Tex. 2015); Ruffin Rd. Venture Lot IV v. Travelers Prop Cas. Co. of Am., No. 10-cv-11-JM(WVG), 2011 WL 2463291, at *4 (S.D. Cal. June 20, 2011); Harleysville Ins. Co. of N.Y. v. Potamianos Props., LLC, 108 A.D.3d 1110, 1112

---

[2] This type of phrase is known as "anti-concurrent cause" language, which commonly precludes coverage when one cause of loss is excluded under a policy, regardless of whether any other causes of loss are covered.  N.D. Cent. Code. Ann. § 26.1-32-03; Policy language addressing multiple causation, 7 Couch on Ins. § 101:57.  Arch does not invoke this doctrine, but through its citation to other precedent supporting its argument, it appears to argue that the "otherwise caused" language is anti-concurrent cause language and thus precludes coverage.  Def.'s Reply 2.

10

(N.Y. 2013). In one case, however, the policy provided coverage for a "specified cause of loss" only if it was "otherwise a Covered Cause of Loss." Ruffin Rd. Venture Lot IV, 2011 WL 2463291 at *4. That requirement is not present in the Policy here. Additionally, the other three cases did not involve policies that contained exceptions imposing liability on the insurance company. Texas Renegade Const. Co., 546 F. App'x at 400; Bilotto, 79 F.Supp.3d at 673-74; Harleysville Ins. Co. of N.Y., 108 A.D.3d at 1111-12. Instead, each case relied on an exclusion which contained anti-concurrent cause language, thus precluding any other causes of loss that may have contributed to the damage. Id.

Arch's argument that the anti-concurrent cause language in the Water Exclusion precludes coverage in this case fails. If Arch was correct, it would follow that the Policy's exception for specified causes of loss under the Wear and Tear Exclusion would always be trumped by the Water Exclusion, thus rendering the entire exception meaningless.

### 2. Wear and Tear Exclusion

The parties agree that the cracked Pipe "was not caused by freezing or by anything striking the Pipe; the <u>crack was due to wear and tear</u>." Stip. Facts 2 (emphasis added). Spring Glen argues that this fact compels the conclusion that the Wear and Tear Exclusion is applicable and, as a result, that the Wear and

11

Tear Exclusion's exception for specified causes of loss applies to impose liability on Arch. Ins. Policy 45, 52; Pl.'s Reply 3. The Court agrees.

"Wear and tear" is one of the causes of loss that is excluded from coverage under the Policy. Ins. Policy 45. The exclusion, however, states that if wear and tear "results in a 'specified cause of loss'. . . [Arch will cover] the loss or damage caused by that 'specified cause of loss.'" Id. The Policy defines "specified causes of loss," in part, as "water damage." Id. at 52. Water damage is then defined, in part, as "[a]ccidental discharge or leakage of water. . . as the direct result of the. . . cracking of a water or sewer pipe that is located off the described premises. . . if the breakage or cracking is caused by wear and tear." Id. The leaking water leading to the damage in this case was due to the circumstances explicitly provided for in the water damage definition. Therefore, the water is "not subject to the provisions of the Water Exclusion." Id. The Court thus concludes that the Policy unambiguously provides coverage for damage caused in a situation such as this one and imposes liability on Arch.

Arch provides three main counterarguments to this position. First, Arch argues that the Water Exclusion only provides coverage when there is an "ensuing loss" (specifically, a fire, explosion, or sprinkler leakage). Def.'s Mem. 7-9. Since the

Water Exclusion does not provide a similar exception for "specified causes of loss," Arch asserts, the definition of "specified causes of loss," which in turn contains the definition of "water damage," cannot impose liability. Def.'s Mem. 8-9; Ins. Policy 44. This assertion is, in part, true. Whereas other exclusions, such as the "'Fungus', Wet Rot, Dry Rot And Bacteria" Exclusion, state that such damage is excluded unless it results in a "specified cause of loss," Ins. Policy 44-45, the Water Exclusion does not provide an exception for "specified causes of loss." Ins. Policy 44. Arch's continued focus on the Water Exclusion, however, ignores that the Wear and Tear Exclusion's ensuing loss provision <u>does</u> provide coverage for specified causes of loss. Ins. Policy 45, 52.

Second, Arch argues that the Wear and Tear Exclusion does not apply because it did not deny coverage under that exclusion; it denied coverage under the Water Exclusion, and according to Arch, the anti-concurrent cause language prevents Spring Glen from recovering under any other exclusion. Def.'s Mem. 10. Arch argues that "the Pipe is not Covered Property" and thus "the Policy's coverage grants and exclusions do not apply to the Pipe." <u>Id.</u> Spring Glen may not be able to claim coverage for the repair of the actual Pipe, but it does not appear that the Policy requires that the Pipe be Covered Property in order for the Wear and Tear Exclusion to apply. Even if it did, however,

13

Arch fails to explain why the Policy would specifically provide coverage for water damage caused by "the breaking apart or cracking of a water or sewer pipe that is located off the described premises . . . if the breakage or cracking is caused by wear and tear." Ins. Policy 52.

Spring Glen uses an analogy to explain its position: "[T]he fact that semi-trucks are generally not Covered Property . . . does not mean that the Policy does not pay for the direct physical loss to the Building when a semi-truck crashes into it." Pl.'s Mem. 11. Arch responds that, in that case, the Building is the Covered Property and the semi-truck is a Covered Cause of Loss, whereas here, the Building is Covered Property but underground water is not a Covered Cause of Loss. Def.'s Mem. 11. This argument, while seemingly accurate, misses the point of Spring Glen's hypothetical. Spring Glen uses this hypothetical to argue that if tangible property (i.e., a semi-truck or a municipal pipe, as opposed to fire or wind) <u>leads to</u> a Covered Cause of Loss (i.e., a building's collapse due to the semi-truck's crash or water damage due to a cracked municipal pipe), that tangible property need not be Covered Property under the Policy in order for the Policy to provide coverage for the damage it may cause. Pl.'s Mem. 11. Spring Glen is right; the Policy does not impose such a requirement.

14

Arch relies on two out-of-circuit cases, General Acc. Ins. Co. v. Unity/Waterford-Fair Oaks Ltd., 288 F.3d 651 (5th Cir. 2002), and Praetorian Ins. Co. v. Arabia Shrine Ctr. Houston, Civil Action No. 4:14-cv-3281, 2016 WL 687564 (S.D. Tex. Feb. 19, 2016), appeal dismissed (Sept. 27, 2016), to support its position that the Wear and Tear Exclusion cannot apply since the Pipe is not Covered Property. Def.'s Mem. 11-16. These cases are not relevant, however, because they do not involve policies that provide coverage specifically for municipal pipes that crack due to wear and tear and lead to water damage.

In General Accident Ins. Co., the plaintiffs relied on similar clauses in the insurance policy to recover for damages caused by water seeping out of a pipe for one to six months due to corrosion or rust. 288 F.3d at 655. The court denied coverage primarily based on the clear exclusion for "loss or damage caused by or resulting from . . . [c]ontinuous or repeated seepage or leakage of water that occurs over a period of 14 days or more." Id. at 655-56. The court also held that a corrosion exclusion, which had a specified causes of loss exception for water damage, did not apply because the leaking pipe was not Covered Property. Id.

Standing alone, this case could support Arch's position. The parties in General Accident Ins. Co., however, did not cite any policy provisions which provided specific coverage for

15

damage caused by corroded, off-premises, municipal water pipes. Id. Here, the Policy specifically provides for damages from the "[a]ccidental discharge . . . of water . . . as the direct result of the breaking apart or cracking of a" plumbing, water, or sewer pipe that is located on <u>or off</u> the premises "<u>if the breakage or cracking is caused by wear and tear.</u>" Ins. Policy 52 (emphasis added). This provision appears to account for off-premises property, which is presumably "Property Not Covered" under the Policy (i.e. "bridges, roadways", "[r]etaining walls that are not part of a building"). Id. at 19.

Nor is <u>Praetorian</u> relevant to the decisions this Court must make. The insurance company in <u>Praetorian</u> paid for water damage, personal property damage, and to remove and replace a cracked pipe. <u>Praetorian</u>, 2016 WL 687564 at *3. The insured then filed a claim in court for additional damages, which was denied. Id. The court in <u>Praetorian</u> denied the claim for two reasons: (1) the water exclusion applied and thus excluded further coverage of damages, and (2) the anti-concurrent causation clause applied, thus making any other cause (<u>i.e.</u>, a specified cause of loss exemption for the corrosion of an underground pipe) irrelevant. Id. at *8. Though similar to this case, the parties in <u>Praetorian</u> did <u>not</u> stipulate to the fact that the damage was due to a cause specifically accounted for in the policy, as the parties did here. Id.

In this case, the Policy does not clearly preclude coverage when the Cause of Loss is not itself Covered Property. Rather, it explicitly carves out an exception for damage caused by an underground pipe which cracks due to wear and tear and is not located on the premises. Ins. Policy 52. Even if this creates an ambiguity, a reasonable person in Spring Glen's position could easily believe the Wear and Tear Exclusion's exception for underground pipes that crack due to wear and tear provides coverage in this case. Because that reasonable interpretation of the ambiguity would impose liability on Arch, the Court would resolve this ambiguity in favor of Spring Glen. See Dundee, 587 N.W.2d at 194.

Third, Arch argues that even if the Wear and Tear Exclusion's specified causes of loss exception applies, the definition of "Water Damage" states that it "does not include loss or damage otherwise excluded under the terms of the Water Exclusion," and therefore coverage is still precluded. Ins. Policy 52 (emphasis added); Def.'s Mem. 9-10. The examples that follow, however, indicate that this exception refers to pipes that break or crack due to causes <u>other than</u>, or <u>in addition to</u>, wear and tear (citing "weather-induced flooding" as an example). Ins. Policy 52. Arch also does not address the later sentence in that definition, which states:

> To the extent that accidental discharge or leakage of water falls within the criteria . . . of this definition of 'specified causes of loss,' <u>such water is not subject to the provisions of the Water Exclusion</u> which preclude coverage for surface water or water under the surface of the ground.

<u>Id.</u> (emphasis added). If this specific type of water damage is <u>not subject</u> to the Water Exclusion, then it cannot also be <u>excluded</u> by the Water Exclusion. Were the Court to follow Arch's interpretation of the Policy, and let the first sentence override the second, it would render the second sentence meaningless. The Wear and Tear Exclusion's specified causes of loss exception, which includes water damage, explicitly accounts for situations like this one. <u>Id.</u> The anti-concurrent cause language in the Water Exclusion cannot in turn preclude coverage when the applicable specified causes of loss exception states that the "water is not subject to the provisions of the Water Exclusion." <u>Id.</u>

Here, the plain language of the insurance contract provides coverage for this specific scenario. Ins. Policy 52. The language is not ambiguous, as it explicitly rejects the notion that coverage is precluded for water damage that results in a situation like this one. Even if the language were ambiguous, however, one interpretation of that ambiguity would still impose liability on Arch. <u>Dundee</u>, 587 N.W.2d at 194. For

18

those reasons, the Court rules that there was a Covered Cause of Loss under the Policy for which Arch is liable.

**B. Bad Faith**

"An insurer has a duty to act fairly and in good faith in dealing with its insured, including a duty of fair dealing in paying claims, providing defenses to claims, negotiating settlements, and fulfilling all other contractual obligations." Grzeskowiak v. Geico Insurance, Case No. 2:09-cv-31, 2010 WL 11537910, at *3 (D.N.D. Sept. 9, 2010)(quoting Hartman v. Estate of Miller, 656 N.W.2d 676, 680 (N.D. 2003). Ordinarily, a bad faith claim presents questions of fact. Id. A court may only rule on a bad faith claim as matter of law if the insurer can demonstrate that it reasonably denied a claim or that the claim was "fairly debatable." Id.

Arch argues that even if this Court rules there was a Covered Cause of Loss, Arch still acted in good faith "because reasonable minds could only draw the conclusion that Arch acted reasonably in handling [the claim]." Def.'s Reply 4. Spring Glen reserves the bad faith claim for trial, arguing that it is a question of fact. Pl.'s Mem. 1, Pl.'s Reply 11. Arch argues that it acted "reasonabl[y], . . . fairly and in good faith" due to the "fairly debatable" Policy language, and so the bad faith claim is a question of law. Def.'s Mem. 18 (quoting Seifert v. Farmers Union Mut. Ins. Co., 497 N.W.2d 694, 698 (N.D. 1993)

19

("bad faith does not exist when an insurer denies coverage based on a reasonable interpretation of policy language")); see Hartman, 656 N.W.2d at 681.

While there are many issues to be considered as they relate to the Policy in this case, that does not necessarily make the language "debatable." Hartman, 656 N.W.2d at 681-3 (denying summary judgment on a bad faith claim, holding that even though "accident" was not defined by the policy, the insurance company ought know the definition of "accident" under North Dakota insurance law). Some provisions of the Policy may appear to contradict each other, but there is a clear provision providing coverage in this case. Arch has not conclusively demonstrated that the claim was debatable or reasonably denied. Therefore, whether Arch acted in bad faith is a question of fact for trial.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Spring Glen's motion for summary judgment on Count One and DENIES Arch's motion for summary judgment on Counts One and Two.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE